**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: EVOLVE BANK & TRUST CUSTOMER DATA SECURITY LITIGATION | ) ) ) ) | 2:24-md-03127-SHL-cgc |
| This Document Relates to: ALL CASES | ) ) ) | |

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL, FEES, EXPENSES, AND SERVICE AWARDS AND OVERRULING
OBJECTIONS TO FINAL SETTLEMENT**

Before the Court is Plaintiffs' Unopposed Motion for Final Approval, Fees, Expenses,

and Service Awards, filed September 30, 2025.  (ECF No. 88.)  The Court held a hearing on the

Motion on November 14, 2025, at which it addressed, and denied, the objections made by

Sharon Benkufsky, Ollie Talbott, Justin Allen, and Leodas Casimir, Jr.  (See ECF No. 96.)  For

the following reasons, the Motion for Final Approval, Fees, Expenses, and Service Awards is

**GRANTED**.

## BACKGROUND

Evolve is an Arkansas-state chartered bank that partners with financial technology

("FinTech") companies to offer banking services to their customers.  (ECF No. 70-1 at PageID

578.)[1]  In February and May 2024, cybercriminals gained unauthorized access to Evolve's

information systems, and accessed and exfiltrated private information, including that belonging

to Evolve's personal banking and FinTech customers (the "Data Incident").  (Id.)

---

[1] The facts outlined herein are from the proposed Settlement Agreement previously
submitted by the Parties.  (See ECF Nos. 69-1 & 70-1.)  Capitalized terms not otherwise defined
herein shall have the meaning defined in the proposed Settlement Agreement.

Following the announcement of the Data Incident, multiple putative class action lawsuits were filed against Evolve and Evolve FinTechs, alleging that Evolve failed to properly protect the Private Information in accordance with its duties, had inadequate data security, was unjustly enriched by the use of the Private Information, and improperly or inadequately notified potentially impacted individuals.  (Id.)

On or about July 1, 2024, Evolve began notifying individuals that their private information may have been compromised in the Data Incident.  (Id. at PageID 579.)  On October 4, 2024, the Joint Panel on Multidistrict Litigation ("JPML") created an MDL docket related to the Data Incident, and transferred twenty-two putative class action lawsuits to the undersigned for coordinated or consolidated pre-trial proceedings.  (Id.)  Between October 16 and November 13, 2024, the JPML conditionally transferred twelve additional putative class actions related to the Data Incident.  (Id.)  On November 26, 2024, the Court appointed J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC, as MDL Lead Counsel and authorized Stranch to litigate all pretrial proceedings and to conduct settlement negotiations on behalf of Plaintiffs and absent putative class members that now comprise the Settlement Class.  (ECF No. 46.)

On January 21, 2025, MDL Lead Counsel filed a Consolidated Class Action Complaint alleging claims for: negligence and negligence per se, breach of third-party beneficiary contract, unjust enrichment, as well as claims under California's Unfair Competition Law, California Consumer Records Act, the California Consumer Privacy Act, and for injunctive relief on behalf of a California subclass.  (ECF No. 53.)

Following the appointment of MDL Lead Counsel, in an effort to conserve resources for the Settlement Class as opposed to spending time and money litigating the Action, counsel for the Parties explored the early resolution of the case, which culminated in the Parties'

2

participating in a mediation session conducted on January 31, 2025, with the Honorable Diane

M. Welsh, a retired federal magistrate judge now with Judicial Arbitration and Mediation

Services in Philadelphia, Pennsylvania.  (ECF No. 70-1 at PageID 579–80.)  In preparation for

and following the mediation, the Parties met on numerous occasions and exchanged extensive

confidential information related to the Data Incident, which allowed the Parties to assess the case

and meaningfully engage in arm's-length settlement discussions.  (Id. at PageID 580.)

 The January mediation was successful, and the Parties reached an agreement regarding

the material terms of a class-wide settlement that resolved all the claims against Defendant in the

case.  (Id.)  On February 25, 2025, the Court continued a Status Conference in the case,

following the Parties' filing of a Notice of Settlement and Request for Stay Pending Settlement.

(ECF No. 60.)   Thereafter, the Parties negotiated the proposed Settlement Agreement and on

April 1, filed their Unopposed Motion for Preliminary Approval.  (ECF No. 69.)  After

conducting a hearing on the motion (ECF No. 76), the Court granted it (ECF No. 79).

 That Order explained the Settlement Agreement's key terms, conditionally certified the

proposed class, ordered Kroll, the settlement administrator, to direct and issue notice, appointed

class representatives and counsel, and adopted the proposed schedule.  (See ECF No. 79.)  The

schedule included, among other things, the date for notice, the opt-out and objection deadlines,

and the deadline for a motion in support of final approval of settlement.  (Id. at PageID 857.)

The dates of several of those deadlines were triggered by the Final Settlement Fairness Hearing,

which the Court scheduled for November 14, 2025.  (Id. at PageID 860.)  The Court explained

that, at the hearing, it would consider: 1) whether the proposed Settlement on the terms and

conditions provided in the proposed Settlement Agreement is fair, reasonable, and adequate, and

should be approved by the Court; 2) the request for attorneys' fees and unreimbursed litigation

3

costs and expenses should be approved; 3) the request for service awards to the Class

Representatives should be approved; and 4) would rule on such other matters as the Court may

deem appropriate.  (Id.)  Pursuant to the schedule, Plaintiffs filed their Unopposed Motion for

Final Approval, Fees, Expenses, and Service Awards on September 30.  (ECF No. 88.)  On

November 14, 2025, the Court held a hearing on the Motion, and denied the objections made by

Sharon Benkufsky, Ollie Talbott, Justin Allen, and Leodas Casimir, Jr.  (See ECF No. 96.)

## I.      Settlement Agreement Terms

The Settlement Agreement provides for benefits for 17,880,046 individuals via a non-

reversionary, all-cash Settlement Fund of $11,858,259.98, from which Settlement Class

Members may elect to receive Cash Payments and/or Credit Monitoring.  (ECF No. 89 at PageID

981–82.)  The Settlement Fund is also to be used to pay Settlement Administration Costs, Court-

awarded Service Awards, and Court-awarded attorneys' fees.  (Id. at PageID 982.)

The Settlement Class Members are entitled to elect one of two payments: Cash Payment

A, Documented Losses, or Cash Payment B, Flat Cash.  (Id. at PageID 984.)  The Cash

Payments are subject to a pro rata increase or decrease from the Net Settlement Fund depending

on the value of all Valid Claims.  (Id.)  Under Cash Payment A, Settlement Class Members may

submit Claims for up to $3,000.00 upon presentment of reasonable documented losses related to

the Data Incident.  (Id.)  Alternatively, under Cash Payment B, Settlement Class Members may

elect to receive a fixed cash payment in the estimated amount of $20.00.  (Id.)  All Settlement

Class Members are also entitled to make a Claim for one year of monitoring that will provide the

following benefits: credit monitoring, real-time alerts, and insurance coverage for up to

$1,000,000 for identity theft.  (Id.)  The Credit Monitoring has an approximate value of $110.00

per year per Settlement Class Member.  (Id.)

In exchange for this relief, Plaintiffs and the Settlement Class Members are deemed to have completely and unconditionally released, forever discharged, and acquitted the Released Parties from all Released Claims, including Unknown Claims, as set forth and defined in the Settlement Agreement.  Plaintiffs and Settlement Class Members are further barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, the Released Claims.

## ANALYSIS

**I.    Motion for Final Approval of Settlement**

Class action suits filed in federal court may only be settled with the court's approval.  See Fed. R. Civ. P. 23(e).  Settlement approval consists of three steps:  "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement."  Bailey v. Verso Corp., 337 F.R.D. 500, 505 (S.D. Ohio 2021) (citing In re Telectronics Pacing Sys., Inc., 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001); Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983)).  The Court previously preliminarily approved the proposed settlement.  (ECF No. 79.)  Thus, the Court turns to the second and third steps.

  A. Notice Was Successful

The Court-appointed administrator, Kroll Settlement Administration LLC ("Kroll") distributed the notice to the provisionally certified Rule 23 class members using a multi-pronged campaign which included:

- Direct email notices
- Online media campaign on Facebook, Instagram, Threads, LinkedIn and Reddit
- A settlement website
- A toll-free telephone line

(ECF No. 89 at PageID 986–87.)  The Court previously found in its Preliminary Approval Order that the Notice Program would adequately apprise all potential class members of the terms of the proposed Settlement Agreement, provide the opportunity to make informed decisions, and comport with due process.  (ECF No. 79 at PageID 854.)

The Declaration of Frank Ballard of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement (ECF No. 88-2), along with Ballard's supplemental (ECF No. 92-1) and second supplemental declarations (ECF No. 95), highlighted the success of the notice program.  Kroll sent an email notice to 17,199,877 potential class members, and a reminder email notice to the 15,124,925 of 15,244,378 email addresses for which the initial notice did not bounce back and for whom Settlement Class Members had not filed a Claim or requested exclusion, factoring in the removal of 42,835 email addresses as requested by Kroll's email vendor to reduce the risk of emails being categorized as spam and to maximize the deliverability of the email campaign.  (ECF No. 88-2 at PageID 940–41.)  The email notices resulted in a direct reach rate of approximately 85.26% of the Settlement Class Members.  (Id. at PageID 942.)  According to Ballard's declaration, the online media campaign supplemented this direct notice reach to achieve over a combined 90% Notice Program reach with an estimated average frequency of 2.6 times.  This high engagement rate supports the Court's previous finding that notice was anticipated to be adequate in this case, as it was in fact adequate.

      B.      Post-Hearing Final Consideration of Settlement

          1.      *Final Certification of the Settlement Class and Appointment of Class Representatives*

In its Preliminary Approval Order, the Court conditionally certified the following class:

> All persons in the United States who provided their Private Information to Evolve, directly or indirectly, and whose Private Information was included in files affected by the Data Incident.

6

(ECF No. 79 at PageID 842–43.)  The Court also provisionally appointed the Class

Representatives.  (Id. at PageID 855.)  There has been no information presented to alter the

Court's previous conclusions.  For the same reasons the Court granted preliminary approval, the

Court grants final certification of the Class and final approval of the appointment of the Class

Representatives.

### 2. *The Factors Support Approval of the Settlement*

Before a district court approves a settlement, it must find that the settlement satisfies the

four factors under Rule 23(e)(2) for determining whether a settlement is "fair, reasonable, and

adequate," namely that: (i) the class representatives and class counsel have adequately

represented the class; (ii) the proposal was negotiated at arm's length; (iii) the relief provided for

the class is adequate; and (iv) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).  The Court stands by its previous finding in the Preliminary

Approval Order that the settlement meets the Rule 23 factors.  (Id. at PageID 845–48.)

In addition to the Rule 23(e) factors, the Sixth Circuit also considers seven factors to

determine whether a class action settlement is "fair, reasonable, and adequate."  See Harsh v.

Kalida Mfg., Inc., No. 3:18-cv-2239, 2021 WL 4145720, at *3 (N.D. Ohio Sept. 13, 2021)

(citing UAW v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)).  These factors are:

1. the risk of fraud or collusion;
2. the complexity, expense, and likely duration of the litigation;
3. the amount of discovery engaged in by the parties;
4. the likelihood of success on the merits;
5. the opinions of class counsel and class representatives;
6. the reaction of absent class members; and
7. the public interest.

7

Id. at *3–4.  The Court found in its Preliminary Approval Order that factors one through five and factor seven were met.  (ECF No. 79 at PageID 848–49.)  The Court noted that the assessment of factor six—the reaction of absent class members—would be addressed after the final approval hearing.  (Id. at PageID 848 n.4.)  The Court addressed factor six at the November 14 hearing, and examines it further now.

According to Kroll, it received 766 valid bulk opt-out requests, and thirty-three valid individual opt-out requests.  (ECF No. 95-1 at PageID 1119.)  On top of this, Sharon Benkufsky, Ollie Talbott, Justin Allen, and Leodas Casimir, Jr., objected to the settlement either directly to Kroll, to the Court, or both.  The Court addressed each of those objections at the Final Approval Hearing, and rejected them.[2]

The fact that only around eight hundred people opted out or lodged an objection to the settlement out of the universe of more than 15 million Settlement Class Members who were provided direct notice of the proposed settlement demonstrates that the reaction of absent class members is positive.  An "overwhelming positive class response highlights the fairness of the settlements to unnamed class members and weighs heavily in favor of approval of the settlements."  In re Se. Milk Antitrust Litig., No. 2:07-CV-208, 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013).  The lack of valid objections and low number of opt-outs in relation to the vast number of Settlement Class Members also supports approval of the settlement.

---

[2] On December 8, 2025, Allen submitted what he deemed a "2ND OBJECTION AND RESPONSE TO CLASS REPRESENTATIVES RESPONSE TO OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT BY JUSTIN ALLEN A WHITE UNMARRIED MAN WHO IS ALSO NATIVE AMERICAN SCOTTISH FRENCH SPANISH !RISH AND POLISH." (ECF No. 97.)  That objection was untimely and it was also baseless for the same reasons the Court articulated at the Final Settlement Fairness Hearing, as well as in its Order Denying Motion for Immediate Declaratory Relief and for Injunctive Relief to Stay Final Approval of Settlement and Emergency Motion for Intervention, Injunctive Relief, and Investigation of Fraud on the Court (ECF No. 93).

**II.     Attorneys' Fees, and Service Awards**

      A.     <u>Attorneys' Fees</u>

"The Sixth Circuit permits calculation of attorneys' fees under either the lodestar method (multiplying the number of hours spent on the litigation by certain attorneys by their hourly rate) or the percentage of the fund method (counsel receive a set percentage of the total settlement fund)."  <u>In re</u> <u>Packaged Ice Antitrust Litig.</u>, No. 08-MDL-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011).  "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'"  <u>Van Horn v. Nationwide Prop. & Cas. Ins.</u>, 436 F. App'x 496, 498 (6th Cir. 2011) (quoting <u>Rawlings v. Prudential–Bache Props., Inc.</u>, 9 F.3d 513, 516 (6th Cir.1993)).

As a common fund case, Plaintiffs assert that "[t]he percentage-of-the-benefits method is the most appropriate and efficient way of awarding fees, and the standard 33% market rate is appropriate here."  (ECF No. 89 at PageID 999.)  To that end, Plaintiffs assert that "the Court should approve payment of $3,952,753.33 in attorneys' fees, which is inclusive of all unreimbursed litigation expenses and costs and represents 33% of the $11,858,259.98 Settlement."  (<u>Id.</u>)  Plaintiffs assert that, in data breach cases in particular, courts have found that an award of one-third of the common fund is "customary and typical of like awards."  (<u>Id.</u> at PageID 1000 (collecting cases).)

Consistent with the law in the Sixth Circuit and this District, the Court finds that an award of one-third of the Settlement is appropriate to compensate the attorneys, including for their unreimbursed litigation expenses and costs, and awards the attorneys $3,952,753.33.

B.    Service Awards

Plaintiffs also request the approval of a service award of $2,500 for each of the fourteen

class representatives, for a total of $35,000.  The Sixth Circuit has not defined the circumstances

where service awards to class representatives are justified.  See Lonardo v. Travelers Indemnity

Co., 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010).  However, district courts in this Circuit have

considered three factors when considering these requests: (1) actions taken by Class

Representatives to protect the interests of Class members and others and whether these actions

resulted in substantial benefit to Class members; (2) whether the Class Representatives assumed

substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the

Class Representatives in pursing the litigation.  See Robles v. Comtrak Logistics, Inc., 2022 WL

17672639, at *12 (W.D. Tenn. Dec. 14, 2022) (citing Ross v. Jack Rabbit Servs., LLC, 2016 WL

7320890, at *5 (W.D. Ky. Dec. 15, 2016)).

Here, all three factors weigh in favor of the requested service awards.  First, the Class

Representatives were essential in ensuring that this case was brought, and their actions helped

ensure that the Class members received substantial benefits.  The Class Representatives assumed

at least indirect financial risk and spent significant time and effort in their pursuit of the

litigation.  The Class Representatives "initiated and remained in contact with Class Counsel,

considered and reviewed the pleadings in this case and the Agreement, supervised and monitored

Class Counsel's work, provided background documents, and followed the litigation's progress to

ensure the Settlement Class received the best recovery possible, given the facts and risks of the

Action."  (ECF No. 89 at PageID 1003.)  Accordingly, the Court **AWARDS** $35,000 in service

awards, consistent with the terms outlined above.

**CONCLUSION**

The Court finds that the proposed settlement is fair, adequate, and reasonable and in the best interests of the Settlement Class Members.  Accordingly, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      All terms and definitions used herein have the same meanings as set forth in the Settlement Agreement unless stated otherwise herein.

2.      The Court has jurisdiction over this Action and the parties.

3.      The Court has reviewed the Notice Plan, and the Declaration of Frank Ballard of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement (ECF No. 88-2), along with Ballard's supplemental (ECF No. 92-1) and second supplemental declarations (ECF No. 95), describing the results of the notice campaign, and finds that the Notice Plan constituted the best notice practicable under the circumstances to all Settlement Class Members and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4.      The Court finds that, for purposes of the Settlement only, all prerequisites for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied and **CERTIFIES** the following Settlement Class:

> All persons in the United States who provided their Private Information to
> Evolve, directly or indirectly, and whose Private Information was included
> in files affected by the Data Incident.

Excluded from the Settlement Class are: (a) all persons who are current and prior governing board members of Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff; and (d) persons who timely requested to be excluded from this Settlement.

5.      Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby **GRANTS**
final approval of the Settlement and finds that the Settlement is fair, reasonable, and adequate
and in the best interests of the Settlement Class Members based on, among other things, the
factors enumerated in UAW v. Gen. Motors Corp., 497 F.3d 615 (6th Cir. 2007).

6.      All objections to the Settlement are overruled.

7.      A list of those who have timely opted out of the Settlement and who therefore are
not bound by the Settlement Agreement has been submitted to the Court as Exhibit A to
Ballard's supplemental declaration (ECF No. 92-1 at PageID 1031–41) and Exhibit A to
Ballard's second supplemental declaration (ECF No. 95-1 at PageID 1121–22).  Those lists are
incorporated by reference herein.  All other members of the Settlement Class are subject to all
provisions of the Settlement Agreement and this Court's Order approving the Settlement
Agreement.

8.      The Release set forth in Section XIII of the Settlement Agreement is incorporated
herein by reference and all Settlement Class Representatives and Settlement Class Members shall
be fully subject to all of these provisions.

9.      Upon the Effective Date: (i) the Settlement Agreement shall be the exclusive
remedy for any and all Released Claims of Settlement Class Representatives and Settlement
Class Members; and (ii) Settlement Class Representatives and Settlement Class Members
stipulate to be and shall be permanently barred from initiating, asserting, or prosecuting against
the Released Parties in any federal or state court or tribunal any and all Released Claims.
Accordingly, the Settlement shall terminate the Action.

10.      The Court affirms its appointment of J. Gerard Stranch IV of Stranch, Jennings &
Garvey, PLLC as Lead Settlement Class Counsel; Gary Klinger, Linda Nussbaum, Jeff Ostrow,

James Pizzirusso, Scott Poynter and Lynn Toops as Members of the Executive Committee; and

Frank Watson of Watson Burns, PLLC as Liaison Counsel for the Plaintiffs' Settlement Class.

11.    For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for

Attorneys' Fees in the total amount of $3,952,753.33 and Service Awards in the amount of

$2,500 to each of the following Class Representatives: Samantha Walker, Steven Mason, Tracy

E. Starling, Terrance Pruitt, Duncan Meadows, Zachary Grisack, Christina Fava, Laura

Robinson, Jo Joaquim, Nicole Peterson, Mark D. Van Nostrand, Sharyn Jackson, Evin Jason

Shefa, and Lisa Adewole.

12.    The Action, and all claims asserted therein, is settled and is dismissed on the

merits with prejudice, as set forth in the Final Judgment.

13.    Consummation of the Settlement shall proceed as described in the Settlement

Agreement, and the Court reserves jurisdiction over the subject matter of the Action, the parties,

and the Settlement Class Members with respect to the interpretation and implementation of the

Settlement for all purposes, including enforcement of any of the terms thereof at the instance of

any party and resolution of any disputes that may arise relating to the implementation of the

Settlement or this Order.

14.    In the event that any applications for relief are made, such applications shall be

made to the Court.

15.    This Order, the Judgment and the Settlement Agreement, and all acts, statements,

documents, or proceedings relating to the Settlement Agreement are not, and shall not be

construed as, used as, or deemed to be evidence of, an admission by or against Defendant of any

claim, any fact alleged in the Action, any fault, any wrongdoing, any violation of law, or any

liability of any kind on the part of Defendant's or of the validity or certifiability for litigation of

13

any claims that have been, or could have been, asserted in the Action.  This Order, the Judgment,

the Settlement Agreement, and all acts, statements, documents, or proceedings relating to the

Settlement Agreement shall not be offered or received or be admissible in evidence in any action

or proceeding, or be used in any way as an admission or concession or evidence of any liability

or wrongdoing of any nature or that Plaintiffs, any Settlement Class Member, or any other person

has suffered any damage; provided, however, that the Settlement Agreement and this Order and

the Judgment may be filed in any action by Defendant, Settlement Class Counsel, or Settlement

Class Members seeking to enforce the Settlement Agreement or the Order and Judgment

(including, but not limited to, enforcing the releases contained herein).  The Settlement

Agreement, this Order, and the Judgment shall not be construed or be deemed admissible as an

admission by Defendant that Plaintiffs' claims or any claims that were or could have been

asserted in the Action are suitable for class treatment or any other litigation purpose.  The

Settlement Agreement's terms shall be forever binding on, and shall have res judicata, collateral

estoppel, and all other preclusive effect in all pending and future causes of action, claims for

relief, suits, demands, petitions, lawsuits, or other challenges or proceedings as to Released

Claims and other prohibitions set forth in this Order and the Judgment that are maintained by, or

on behalf of, any Settlement Class Member or any other person subject to the provisions of this

Order and the Judgment.

       16.     If the Effective Date does not occur for any reason, this Order, the Judgment and

the Preliminary Approval Order shall be deemed vacated, and shall have no force and effect

whatsoever; the Settlement Agreement shall be considered null and void; all of the Parties'

obligations under the Settlement Agreement, the Preliminary Approval Order, this Order, and the

Judgment and the terms and provisions of the Settlement Agreement shall have no further force

and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated <u>nunc pro tunc</u>, and the Parties shall be restored to their respective positions in the Action, as if the Parties never entered into the Settlement Agreement (without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue). In such event, the Parties will jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid undue prejudice

17.    The parties are authorized, without further approval from the Court, to agree to and to adopt such amendments, modifications, and expansions of the Settlement Agreement: (i) as are consistent with the Final Approval Order and the Final Judgment, and (ii) which do not materially limit the rights of Settlement Class Members under the Settlement Agreement.

In accordance with Rule 23, this Order resolves all claims against all parties in this Action and is a final order.  A separate judgment consistent with this Order will issue pursuant to Fed. R. Civ. P. 58.

**IT IS SO ORDERED,** this 15th day of December, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
